IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **KEITH CARPENTER,**<br>　　Plaintiff,<br><br>v.<br><br>**ENTERPRISE PRODUCTS COMPANY and ENTERPRISE PRODUCTS PARTNERS, L.P.,**<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CA No. _____<br><br><br>JURY DEMANDED |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

### 1. PRELIMINARY STATEMENT

1.1. Plaintiff demands a jury for any and all issues triable to a jury. This action seeks compensatory and actual/economic damages; and costs and attorneys' fees for the claims suffered by Plaintiff, KEITH CARPENTER, due to ENTERPRISE PRODUCTS COMPANY and ENTERPRISE PRODUCTS PARTNERS, L.P. (referred to herein as "Defendants" or "Enterprise") taking adverse employment actions against him ultimately resulting in the wrongful termination of his employment as explained herein.

1.2 This action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. Section 12112 and/or Americans with Disabilities Amendments Act of 2008 (ADA, ADAAA), the Family and Medical Leave Act (FMLA), the Age Discrimination in Employment Act, as amended (ADEA), the Texas Commission on Human Rights Act (TCHRA) (Chapter 21 of the Texas Labor Code), and Section 451.001 of the Texas Labor Code, which prohibits retaliation for filing a worker's compensation claim in good faith.

## 2. JURISDICTION

2.1.   Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

2.2.   Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 12205 and Rule 54, FRCP.

2.3.   Compensatory damages may be awarded pursuant to 42 U.S.C. § 198la(a)(1) and 42 U.S.C. § 198la(a)(2)(b)(1).

2.4.   Punitive damages may be awarded pursuant to 42 U.S.C. § 1981a(a)(1) and 42 U.S.C. § 1981a(a)(2)(b)(1).

## 3. VENUE

3.1.   Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Defendants maintain its principal office in this district.

## 4. PARTIES

4.1.   Plaintiff is a former employee of Defendants and resides in Vidor, Orange County, Texas.

4.2.   Defendant ENTERPRISE PRODUCTS COMPANY is an employer qualified to do business in Texas and employs more than 50 regular employees. Defendant ENTERPRISE PRODUCTS COMPANY can be served by serving its registered agent CT CORPORATION SYSTEM at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.3.   Defendant ENTERPRISE PRODUCTS PARTNERS, L.P. is an employer qualified to do business in Texas, incorporated in Delaware, and employs more than 50 regular employees. Defendant ENTERPRISE PRODUCTS PARTNERS, L.P., with principal offices at 1100 Louisiana Street, Houston, Texas 77002 can be served by serving its registered agent CT CORPORATION SYSTEM at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## 5. STATEMENT OF FACTS

5.1  Plaintiff worked for Defendants for 35+ years until he was terminated on October 12, 2019.

5.2  Plaintiff first worked as an Operation Supervisor until 2012 when he became a Subject Matter Expert Relief Operator. He performed well and intended to continue to work with the company until retirement.

5.3  Plaintiff suffers from diabetes mellitus, prostate cancer, high blood pressure, congestive heart failure, sleep apnea and anemia. He informed Defendants of his diabetes mellitus and prostate cancer prior to his termination.

5.4  After Defendants learned about Plaintiff's disabilities, Plaintiff was often questioned about his health by his supervisors. Plaintiff found such repeated questioning offensive to the point he felt harassed and concerned that he was being perceived as unable to do his job because of his disabilities.

5.5  Plaintiff also learned that Defendants had disclosed his private medical information to co-workers without his permission, after he notified them about his disabilities (diabetes and prostate cancer). Plaintiff was approached by co-workers who informed him that Jeff Myers told them Plaintiff needed to undergo cancer treatment.

5.6  Plaintiff was also repeatedly asked when he was going to retire. He would be asked by supervisors how old he was and if he planned on retiring any time soon. At the time of Plaintiff's termination, he was 57 years old.

5.7  On or about April 9, 2018, Plaintiff was called into a meeting and told he was seen coming off of a tank fatigued and therefore would be required to take a physical fitness test on April 10, 2018. However, this was a false accusation because Plaintiff did not climb tanks because he had previously notified his supervisors of his disabilities and been told he did

      not need to climb tanks as an accommodation. Therefore, since receiving that previous accommodation, Plaintiff did not perform that task.

5.8     During the April 9, 2018 meeting, Plaintiff explained that he felt he was being discriminated against because of his disabilities. He complained at that time that he was repeatedly made to feel uncomfortable about his health even though he was performing his essential job functions. Plaintiff also complained to Defendants' HR, management and co-workers that he felt he was being discriminated against because of his disabilities.

5.9     The wrongful accusation that he had came off of a tank fatigued and the unfair requirement he undergo a physical fitness test caused Plaintiff considerable stress to the point he felt as if he was having a heart attack. Plaintiff went to see his treating physician on April 9, 2018 after this meeting and found out he had a panic attack.

5.10    Despite Plaintiff's assertions that he had not been climbing a tank, Defendants still insisted that Plaintiff take a physical fitness test. At this time, nothing had changed about Plaintiff's job duties and he was performing the essential functions of his job with the reasonable accommodation to not climb ladders/tanks. Defendants did not require other employees who performed the same or similar job duties as Plaintiff to take this type of test.

5.11    The physical fitness test Defendants required included activities that Plaintiff did not engage in when performing his essential job functions at work. For example, one part of the test required Plaintiff to lift 20lbs and carry continuously, multiple times. This was never a task that Plaintiff needed to perform to do his job. In fact, the heaviest weight Plaintiff needed to lift to perform his job duties was about a 5lb basket with a sample.

5.12    During the physical fitness test, Plaintiff injured both of his knees and his wrists when climbing a ladder. He was not supposed to be climbing a ladder because of his disability

*Plaintiff's Original Complaint*                                                                                                 4

and previous accommodation and he told Defendants this but was still required to perform the task in order to complete this newly required test. Prior to this injury, he had completed a considerable portion of the test, but could not finish it because of these injuries.

5.13    Plaintiff informed Defendants that he had been injured on-the-job during the physical fitness test he was required to take. Defendants did not initially file a workers' compensation claim for Plaintiff although he requested it. Eventually a workers' compensation claim was filed after Plaintiff persisted and called the third-party insurance agency, Met Life and Broadspire.

5.14    Plaintiff did not receive any assistance from Defendants to get his workers compensation claim filed. He noticed that treatment towards him got increasingly worse after he requested that a workers' compensation claim be filed because he was injured at work.

5.15    Plaintiff was in pain following his on-the-job injury and took off work on April 11, 2018, using his own accrued leave.

5.16    On April 12, 2018, Plaintiff went to work but was still in pain, so he made an appointment to see a doctor. At this point, Plaintiff was wearing braces and wraps on his knees. After Plaintiff received his MRI Results, he learned that he had torn his meniscus in both of his knees.

5.17    Plaintiff put Defendants on notice of his injury and that he would still be able to perform his job with the reasonable accommodations to be able to wear his knee braces and use a rolling walker. During this time, it was also suggested to Plaintiff that at his age, he should just consider retirement.

5.18    Defendants told Plaintiff that in order for him to return to work, a doctor would need to release him to perform a list of job duties, most of which were physical in nature and were

not duties he previously performed or needed to perform to complete his essential job functions. He was also told he would need to complete the physical fitness test.

5.19    Defendants further repeatedly changed the requirements or duties Plaintiff would need to be cleared by a doctor to perform to be able to return to work.

5.20    Defendants did not work with Plaintiff to try and accommodate his disabilities and instead said that he had to go on short term disability or face termination. When Plaintiff protested and reiterated that he just needed reasonable accommodations, he was told that he was being insubordinate.

5.21    After Defendants failed to allow Plaintiff to work with reasonable accommodations or even consider what accommodations could be provided, Plaintiff attempted to apply for FMLA leave.

5.22    When Plaintiff attempted to apply for FMLA leave, he received no assistance from Defendants, was wrongfully accused of not providing timely paperwork and was ultimately told that Defendants did not recognize FMLA.

5.23    Plaintiff saw no other choice but to eventually acquiesce and submit documentation for short term and then long-term disability because Defendants would not allow him to return to work unless his doctor provided a total release and he repeat the physical fitness test that was administered on April 10, 2018 when he got injured. Defendants did not offer or attempt to provide any accommodations at this point.

5.24    Plaintiff also learned from other employees that Defendants' management said they were looking for a way to get rid of him and push him out on disability because of his health.

5.25    Plaintiff was able to perform the essential functions of his job with reasonable accommodations. He did not want to be out of work or be forced to take disability leave.

5.26　Plaintiff suffered from a panic attack, depression, loss of sleep and anxiety as a result of the negative treatment he faced at work and the adverse actions taken against him, as explained herein.

5.27　After 35 years of employment with Defendants, Plaintiff was terminated while still recovering from an on-the-job injury and lost the income he used to provide for himself and his family.

## 6.　CONDITIONS PRECEDENT

6.1　All conditions precedent to jurisdiction have occurred or been complied with.

6.2　Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.3　This lawsuit was filed within ninety (90) days of Plaintiff receiving his Notice of Right to Sue from the EEOC.

## 7.　CAUSES OF ACTION

### *Disability/Perceived Disability Discrimination and Failure to Reasonably Accommodate (ADA and TCHRA)*

7.1　Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.2　Plaintiff was a member of a protected class as a qualified employee with a disability/perceived disability.

7.3　Plaintiff suffered from a disability/perceived disability but was still performing the essential functions of his job.

7.4   Plaintiff suffered adverse actions when he was forced to go on leave and not return to work and then was ultimately terminated after Defendants learned of his disability or perceived him as a disabled employee.

7.5   Defendants failed to engage in the interactive process and failed to reasonably accommodate Plaintiff's disability. Plaintiff's rights were violated when he was not reasonably accommodated after numerous requests.

7.6   Plaintiff alleges Defendants violated the ADA and the TCHRA when Defendants took adverse actions against Plaintiff, including terminating his employment, based on his disability/perceived disability and failed to reasonably accommodate his disability.

### *Age Discrimination*
### *(ADEA and TCHRA)*

7.7   Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.8   Plaintiff was a member of a protected class based on age as he was over forty (40) at the time of his termination (57 years old at time of termination).

7.9   Plaintiff was qualified for his position at the time he was forced to go on leave and at the time of his termination.

7.10   Plaintiff was replaced by a substantially younger individual outside of his protected class and/or treated less favorably than individuals outside of his protected class.

7.11   Plaintiff alleges Defendants violated the ADEA and the TCHRA when Defendants took adverse actions against Plaintiff (including terminating his employment) based on his age.

### *Workers' Compensation Retaliation*
### *(Texas Labor Code)*

7.12   Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs

above as if fully set forth herein.

7.13    Defendants retaliated against Plaintiff by taking adverse personnel actions against him for his good faith attempt of filing a Worker's Compensation claim and retaliated against him based on his engagement in such protected activity.

7.14    Plaintiff contends that Defendants took such adverse personnel actions as retaliation in violation of the Texas Labor Code, specifically, refusing to allow him to return to work and ultimately discharging him because he attempted in good faith to file a worker's compensation claim.

7.15    As a direct and proximate result of the actions of Defendants, Plaintiff suffered economic damages and emotional distress.

7.16    As a direct and proximate result of the aforementioned arbitrary and capricious acts, Plaintiff has suffered severe and grievous harm.

### *FMLA Retaliation & Interference*

7.17    Plaintiff incorporates by reference each of the facts and allegations set forth above as if fully set forth herein.

7.18    Plaintiff was qualified for medical leave under the FMLA.

7.19    Plaintiff complied with all reasonable requests from Defendants for information regarding his medical leave/request for medical leave.

7.20    Plaintiff invoked his right to FMLA-qualifying leave.

7.21    Defendants, through its employees, interfered with Plaintiff's FMLA leave and retaliated against Plaintiff for requesting FMLA leave.

7.22    Defendants' actions were knowing and intentional violations of the FMLA or in reckless disregard of the FMLA and Plaintiff's rights.

7.23 Plaintiff suffered adverse actions causally related to his invocation of FMLA rights when he was forced out of work and ultimately his employment was terminated.

7.24 Plaintiff has suffered damages as a result of the violation. Defendants are liable for damages recoverable under the FMLA, including back pay, interest on back pay, front pay, lost benefits, liquidated damages, and attorneys' fees, to which he is entitled under the FMLA.

### *Retaliation*
### *(ADA, ADEA and TCHRA/Texas Labor Code)*

7.25 Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.26 Defendants intentionally retaliated against Plaintiff after making requests for accommodation in violation of the ADA.

7.27 Defendants intentionally retaliated against Plaintiff in violation of the ADA and ADEA after complaining to Defendants' management and HR about offensive references to his age, questions regarding when he was going to retire, and being repeatedly questioned about his disability.

7.28 Defendants intentionally retaliated against Plaintiff because of his opposition to discriminatory practices (based on age and disability/perceived disability) in violation of the Texas Labor Code.

## 8. PRAYER

WHEREFORE, Plaintiff prays the Court order to award such relief including the following:

8.1.1 Award Plaintiff actual damages;

8.1.2 Order Defendants to pay Plaintiff back pay and front pay and benefits;

8.1.3 Award Plaintiff compensatory damages for mental anguish;

8.1.4   Award Plaintiff punitive damages to be determined by the trier of fact;

8.1.5   Grant Plaintiff pre-judgment and post-judgment interest;

8.1.6   Order Defendants to pay Plaintiff's costs and attorney's fees in this action; and,

8.1.7   Order and grant such other relief as is proper and just.

Respectfully Submitted,

***/s/ Jacques P. Leeds***
Jacques P. Leeds
Federal I.D. No. 2526879
State Bar No. 24092678
**LEEDS LAW FIRM, PLLC**
700 Milam Street, Suite 1300
Houston, TX 77002
Telephone: 713-492-2906
Facsimile: 832-787-1020
jacques@jleedslawfirm.com
Attorney-in-Charge for Plaintiff